UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JASON R. SCHAMBER,                                                REPORT
                              Plaintiff,                          and
                                                           RECOMMENDATION
              v.
                                                            12-CV-1061A(F)
CAROLYN W. COLVIN,[1] Commissioner of
Social Security,

                              Defendant.
_____

APPEARANCES:          LAW OFFICES OF KENNETH HILLER
                      Attorneys for Plaintiff
                      JAYA ANN SHURTLIFF, Of Counsel
                      6000 North Bailey Avenue
                      Suite 1A
                      Amherst, New York 14226

                      WILLIAM J. HOCHUL, JR.
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      MARY C. KANE
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202, and

                      STEPHEN P. CONTE
                      Regional Chief Counsel - Region II
                      JEREMY A. LINDEN
                      Assistant Regional Counsel
                      United States Social Security Administration
                      Office of the General Counsel, of Counsel
                      26 Federal Plaza, Room 3904
                      New York, New York 10278

_____

[1]Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on March 6, 2013.  (Doc. No. 7).  The matter is presently before the court on Plaintiff's motion for judgment on the pleadings or alternatively, for remand for further development of the record filed on September 18, 2013 (Doc. No. 11), and Defendant's motion for judgment on the pleadings filed on November 29, 2013.  (Doc. No. 16).

## BACKGROUND

Plaintiff Jason Schamber ("Plaintiff" or "Schamber"), seeks review of Defendant's decision denying him Supplemental Security Income Benefits ("SSI") under Title XVI of the Act.  In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of mild mental retardation and learning disorder, but does not have an impairment or combination of impairments within the Act's definition of impairment.  (R. 22). [2]  Defendant determined that even if Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, their persistence and limiting effects alleged by Plaintiff were not credible (R. 26), and that Plaintiff, with no past relevant work, was able to perform simple unskilled work.  (R. 27).  The ALJ therefore found Plaintiff not disabled, as defined in the Act, at any time from the alleged onset date of December 1, 2009 (R. 115), through the date of the Administrative Law Judge's decision on August 15, 2011.  (R. 28).

_____

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

## PROCEDURAL HISTORY

On January 6, 2010, Plaintiff filed an application for supplemental insurance benefits under Title XVI of the Act.  (R. 103).  Plaintiff's application alleged disability based on a learning disability as of December 1, 2009.  (R. 115).  Plaintiff's application was initially denied by Defendant on March 12, 2010 (R. 52), and, pursuant to Plaintiff's request filed March 20, 2010 (R. 66), a hearing was held before Administrative Law Judge Timothy M. McGuan ("McGuan" or "the ALJ") on July 14, 2011 in Buffalo, New York.  (R. 32-51).  Plaintiff, represented by Joseph Clark, Esq., ("Clark"), appeared and testified at the hearing.  *Id.*  The ALJ's decision denying the claim was rendered on August 15, 2011.  (R. 28).

On October 12, 2011, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 15).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on September 6, 2012.  (R. 1-7).  This action followed on October 31, 2012, with Plaintiff alleging the ALJ erred by failing to find him disabled.  (Doc. No. 1).

Defendant filed an answer on February 26, 2013 (Doc. No. 6), and on November 29, 2013, filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 16) ("Defendant's Memorandum"). On September 18, 2013, Plaintiff filed a motion for judgment on the pleadings or alternatively, remand of the matter for further development of the record ("Plaintiff's motion"), accompanied by a supporting memorandum of law (Doc. No. 11) ("Plaintiff's Memorandum").  On March 3, 2013, Plaintiff filed a Response/Reply to Defendant's

motion for judgment on the pleadings (Doc. No. 19) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be DENIED; Plaintiff's motion should be GRANTED as to his request for judgment on the pleadings, and alternatively, GRANTED as to his request for remand for further clarification of the record consistent with this Report and Recommendation.


## **FACTS**[3]

Plaintiff Jason Schamber ("Schamber" or "Plaintiff") was born on February 4, 1985 (R. 103), and graduated high school with an individualized educational placement ("IEP") diploma.  (R. 121). Plaintiff's most recent work experience includes work as a laborer for a moving company and tire store.  (R. 112).  Plaintiff alleges that he stopped working on June 1, 2008, because Plaintiff's learning disability rendered him unable to do the work required.  (R. 120).

Relevant to the alleged period of disability, on December 7, 2001, Mary Jane Hayes, a school psychologist ("Psychologist Hayes"), completed a psychological report on Plaintiff on behalf of the Kenmore-Tonawanda School District.  (R. 157).  A Wechsler Individual Achievement Test ("WIAT")[4] administered the same day measured Plaintiff's basic reading at 78, basic mathematics at 65, and spelling ability at 83.[5]  Plaintiff's Wechsler Intelligence Scale for Children ("WISC-III") test results measured Plaintiff's verbal IQ at 60, performance IQ at 68, and full-scale IQ at 61, with verbal subtests of 24

---

[3] Taken from the pleadings and the administrative record.
[4] WIAT is a test methodology used to assess academic achievement in the areas of reading, mathematics, writing, and oral and language ability.
[5] WIAT standard scores have a mean (average) of 100. Scores within 10 points of the mean are considered average.

in vocabulary, 20 in similarities, 24 in block design, and 33 in matrix reasoning.  *Id*.

Psychologist Hayes opined that Plaintiff's full scale IQ of 61 (.5[th] percentile), verbal

scale of 60 (.4[th] percentile), and performance scale of 68 (2nd percentile), placed Plaintiff

in the mentally retarded range of mental ability.  (R. 158).  Psychologist Hayes

recommended that Plaintiff continue to be classified as mentally retarded and

suggested that Plaintiff's IEP program include counseling.  (R. 159).  An IEP program

review conducted on February 27, 2002, classified Plaintiff as mentally retarded, with a

WISC-III full scale IQ measured at 63, with reading level measured at the fourth grade

level, and math measured at the fifth grade level.  *Id*.  Plaintiff's IEP recommendation

included that Plaintiff remain in a highly structured school setting, and noted that Plaintiff

was experiencing success and was willing to work harder.  (R. 151).  In June 2003,

Plaintiff, then 18 years old, graduated from Niagara Falls High School in Niagara Falls,

New York with an IEP diploma.  (R. 149).

On March 3, 2008, Shepard Goldberg, PhD., ("Dr. Goldberg"), completed a

psychiatric evaluation on Plaintiff who reported difficulty with short and long term

memory, learning new material, and finding words.  (R. 169).  Dr. Goldberg noted that

Plaintiff was cooperative, but limited in his fund of personal knowledge (R. 169),

appeared apathetic, was limited in his ability to answer specific questions, and exhibited

very slow animation with restricted affect.  (R. 169).  Dr. Goldberg assessed Plaintiff

with below average cognitive functioning, poor insight and judgment, and opined that

although Plaintiff was able to follow and understand simple directions and instructions,

he questioned Plaintiff's ability to perform tasks independently, maintain attention and

concentration, and follow a regular schedule.  Dr. Goldberg further opined that it would

be difficult for Plaintiff to learn new tasks, was beyond Plaintiff's ability to perform

complex tasks, and doubted Plaintiff's ability to make appropriate decisions, deal with

stress, or relate effectively in any type of social or vocational situation, deficiencies

which Dr. Goldberg opined would interfere with Plaintiff's ability to function on a daily

basis. *Id.*

On March 11, 2010, T. Andrews, PhD., ("Dr. Andrews") completed a Psychiatric

Review Technique on behalf of the Social Security Administration, and assessed

Plaintiff with moderate ability to remembering locations and work-like procedures,

maintaining attention and concentration for extended periods of time, performing

activities within a schedule, maintaining a schedule and regular attendance, remaining

punctual within customary tolerances, and carrying out detailed instructions.  (R. 172).

Dr. Andrews opined that Plaintiff was able to understand simple instructions and make

simple work-related decisions with limited ability to maintain attention and concentration,

and that Plaintiff retained the ability to return to simple, low contact jobs.  (R. 174).


## DISCUSSION

**1.     Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can
> be expected to last for a continuous period of not less than
> 12 months. . ..  An individual shall be determined to be under
> a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable to
> do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of
substantial gainful work which exists in the national
economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to
perform any past relevant work, the burden shifts to the Commissioner to prove there is
alternative employment in the national economy suitable to the claimant. *Parker v.
Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.     <u>Standard and Scope of Judicial Review</u>

The standard of review for courts reviewing administrative findings regarding
disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law
judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402
U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a
reasonable person would "accept as adequate to support a conclusion." *Consolidated
Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical
facts, diagnoses or medical opinions based on these facts, subjective evidence of pain
or disability (testified to by the claimant and others), and . . . educational background,
age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)
(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating
physician is supported by medically acceptable techniques and results from frequent
examinations, and the opinion supports the administrative record, the treating
physician's opinion will be given controlling weight. *Schisler  v. Sullivan*, 3 F.3d 563,
567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

with such an impairment is unable to perform substantial gainful activity.[7] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, at * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F.2d at 467.

In reviewing the administrative finding, the court must follow the five-step analysis and 20 C.F.R. § 416.935(a) ("§ 416.935(a)"), to determine if there was

---

[7] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

substantial evidence on which the Commissioner based the decision.  20 C.F.R. §

416.935(a); *Richardson*, 402 U.S. at 410.

**B.**    **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity.

"Substantial gainful activity" is defined as "work that involves doing significant and

productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).

Substantial work activity includes work activity that is done on a part-time basis even if it

includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In this case, the ALJ determined that Plaintiff had not engaged

in substantial gainful activity since December 18, 2009, the date Plaintiff filed for

disability.  (R. 22).  Plaintiff does not contest this determination.

**C.**    **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether a disability

claimant has a severe medically determinable physical or mental impairment that meets

the duration requirement in 20 C.F.R. § 404.1509 ("§ 404.1509"), and significantly limits

the claimant's ability to do "basic work activities."  If no severe impairment is found, the

claimant is deemed not disabled and the inquiry ends.  20 C.F.R. § 404.1420(a)(4)(ii).

The Act defines "basic work activities" as "abilities and aptitudes necessary to do

most jobs," and includes physical functions like walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and

speaking; understanding, carrying out, and remembering simple instructions; use of

judgment; responding appropriately to supervision, co-workers and usual work

situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) ("§ 404.1521(b)"), 416.921(b).  The step two analysis may do nothing more than screen out *de minimus* claims,  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), and a finding of a non-severe impairment should be made only where the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on the claimant's ability to work.  *See Rosario v. Apfel,* 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856)).

In this case, the ALJ determined Plaintiff had the severe impairments of mental retardation and learning disorder as defined under 20 C.F.R. § 416.920(c) ("§ 416.920(c)"), that interfere with Plaintiff's ability to perform basic work activities and have lasted, or are expected to last for a period not less than twelve continuous months. (R. 22).  Plaintiff does not contest the ALJ's finding on this issue.

**D. Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.02 ("§ 12.02") (Organic

Mental Disorders), and 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05 ("12.05") (Mental

Retardation).[8]  In the instant case, the ALJ, determined that Plaintiff's impairments do

not meet or equal the criteria necessary to establish disability under §§12.02 or 12.05.

(R. 22-23).

**Mental retardation**

In order to be found disabled under either § 12.05C or § 12.05D, a disability

claimant must first provide evidence of

> significantly subaverage general intellectual functioning with deficits in adaptive
> functioning initially manifested during the developmental period; *i.e.*, the evidence
> demonstrates or supports onset of the impairment before the age of 22.

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.05 ("§ 12.05").

In this case, the ALJ, after not fully addressing whether Plaintiff's IQ scores satisfy the

threshold criteria for disability under § 12.05, notes that Plaintiff received benefits as a

child for the period between January 1, 1997 and June 2008 (R. 20), and that Plaintiff's

IQ scores place Plaintiff in the "mildly retarded range."  (R. 24).  Evidence in the record

of Plaintiff's full scale IQ scores (measured as 61 on December 7, 2001, when Plaintiff

was 16 years old, and 63 on February 27, 2002, when Plaintiff was 17 years old) (R.

24), qualify as *prima facie* evidence to establish that Plaintiff suffers from significantly

subaverage intellectual functioning sufficient to satisfy the first threshold criteria required

under § 12.05.  *See Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012) (evidence of

qualifying IQ test scores as an adult meets the burden of establishing significantly

---

[8] On September 3, 2013, the SSA substituted the term "intellectual disability" for "mental  retardation"
under  listed impairments.  Because the ALJ and the Appeals Council use the term in effect when Plaintiff
filed his disability benefits application, *i.e.*, mental retardation, the court, in the interest of consistency,
uses that same term.

subaverage intellectual functioning before age 22).  The court thus reviews whether Plaintiff is able to meet the second prong of the threshold criteria for disability under § 12.05

**Deficits in adaptive functioning**

The ALJ next determined that Plaintiff exhibited "adequate adaptive functioning with no additional physical or mental impairments."  (R. 24).  20 C.F.R. § 416.920(c)(4) ("§ 416.920(c)(4)") outlines four broad areas that ALJ's must utilize to rate a claimant's degree of functional limitation that include: (1) activities of daily living; (2) social functioning (3) concentration, persistence and pace, and (4) episodes of decompensation.[9]  Each area is rated on a five-point scale: none, mild, moderate, marked and extreme.  *Id*.  The Second Circuit analyzes deficits in adaptive functioning based on a disability claimant's ability to cope with the challenges of ordinary everyday life that may include the ability to navigate public transportation without assistance, engage in productive social relationships, manage personal finances, follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for independent tasks, make simple decisions, and relate adequately with others.  *Talavera*, 697 F.3d 145, at 154.

In this case, the ALJ found that Plaintiff possessed adequate adaptive functioning (R. 24), and concurred with state agency medical consultant's indication that Plaintiff had no restrictions to his activities of daily living, no difficulties maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation.  (R. 26).  Such determination however, does

---

[9] As the record does not reveal any episodes of decompensation, the court does not review the ALJ's determination under this criteria.

not include any discussion of the weight assigned to Dr. Goldberg's consultative psychiatric assessment on March 3, 2010, or assess Dr. Goldberg's expressed concern that Plaintiff would  be able to perform tasks independently, maintain concentration, attention, and a regular schedule, relate effectively in any type of social or vocational situation, or manage stress (R. 170), and Dr. Goldberg's opinion that Plaintiff's cognitive problems may significantly interfere with Plaintiff's ability to function on a daily basis. (R. 171). (emphasis added).  The court acknowledges that ALJ's are not required to reconcile every conflicting piece of evidence.  *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  Alternatively, ALJ's may not pick and choose to adopt parts of a medical opinion.  *Caternolo v. Astrue*, 2013 WL 1819264, at *9 (W.D.N.Y. April 29, 2013) (ALJ may not pick and choose only parts of a medical opinion (citing *Nix v. Astrue*, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 2009)).  However, in cases where as here, no treating physician opinion exists in the record, the ALJ is required to provide explanation as to the weight afforded to the agency's consultative opinions.  *See Gumaer v*. Colvin, 2014 WL 701770, at *3 (N.D.N.Y. Feb. 24, 2014) (citing *Richardson v. Barnhart*, 443 F. Supp.2d 411, 425 (W.D.N.Y. 2006)).  Importantly, in this case, the ALJ also failed to consider Plaintiff's testimony that he was fired from his job[10] for the Town of Tonawanda for continually running into traffic during his collection work after being reminded not to do so (R. 39), and Plaintiff's testimony that he was late to the administrative hearing because he got lost while driving to the hearing, had difficulty following directions, and was frequently lost.  (R. 42).  The ALJ's failure to explain why the consultative opinions, particularly Dr.

---

[10] Plaintiff testified that his work for the Town of Tonawanda included work on the back of a truck. Although the record is not specific as to the particular job that Plaintiff worked, the context of Plaintiff's testimony suggests that Plaintiff worked on a truck as a sanitation or public works employee.

Goldberg's, coupled with the objective indicators of Plaintiff's limited adaptive functioning ability consistent with Dr. Goldberg's opinion, severely undercuts the ALJ's adverse determination on this issue.  As such, the ALJ's determination that Plaintiff possessed adequate adaptive functioning capacity is not based on substantial evidence in the record.

Although ordinarily a recommendation of remand would be appropriate to afford the ALJ the opportunity to reconsider the entirety of the opinions of Drs. Goldberg and Andrews, and provide reasoning to support the weight assigned each opinion, as remand for calculation of benefits is recommended as indicated below, Discussion, *supra*, at 15-18, remand for further evidentiary proceedings under this step of the disability analysis consistent with the foregoing would serve no purpose.  *Mariani v. Colvin*, 567 Fed.App'x. 8 (2d Cir. 2014) (remand not appropriate where evidentiary proceedings would serve no purpose) (citing *Parker*, 626 F.2d 225 at 235)).

The undersigned accordingly proceeds to the next step of the analysis to determine whether Plaintiff, in addition to meeting the threshold criteria for mental retardation under § 12.05, meets the criteria for disability under §§ 12.05C or D.

**§ 12.05C**

Upon providing evidence to establish the threshold criteria under § 12.05, to be considered disabled under § 12.05C, a disability claimant must also provide evidence to support two additional criteria that include

> [a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.05C ("§ 12.05C").

In this case, the ALJ's determination that Plaintiff's IQ scores fall within the mildly mentally retarded range based on Plaintiff's full scale IQ of 61 on December 27, 2001 (R. 159), and 63 in February 1999 (R. 63), satisfies the first prong of the criteria for disability under § 12.05C.  (R. 24).  The undersigned therefore proceeds to review whether substantial evidence supports Plaintiff's learning disorder is a secondary impairment to Plaintiff's mental retardation, and causes additional and significant work-related limitations of function sufficient to meet the second criteria required to establish that Plaintiff is disabled under § 12.05C.

**Learning disorder as a secondary impairment**

In this case, the ALJ determined that Plaintiff did not meet the criteria for disability under § 12.05C, as Plaintiff's learning disorder was not a secondary impairment causing additional and significant work-related limitations to Plaintiff's ability to function.  (R. 24).  Plaintiff contends this finding is in error, as the ALJ's finding that Plaintiff's learning disorder was "severe" during the step two analysis deems Plaintiff's learning disorder a secondary impairment for purposes of evaluation as a qualifying factor demonstrating Plaintiff is disabled under § 12.05C.  Plaintiff's Memorandum at 7.  Plaintiff further contends that the American Psychiatric Association's Diagnostic and Statistical Manual[11] ("DSM-V"), assigns separate diagnostic codes for mental retardation and learning disorders, and that specific learning domains assigned to learning disorders support that Plaintiff's mental retardation and learning are separate impairments that may co-exist.  Plaintiff's Memorandum at 7.  Defendant maintains that

---

[11] Relevant to the period of disability in this case, mental impairments were analyzed on a multi-axial system of assessment, consisting of five axes, each of which refers to a different domain of information. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV (Text Revision) ("DSM-IV-TR") at 27.

Plaintiff's learning disorder should not be considered a significant secondary impairment for review purposes under § 12.05C, as the DSM-V regards only specific learning disorders, and Dr. Andrews's diagnosis of learning disability does not adhere to the DSM-V's diagnostic criteria for specific learning disorders.  Defendant's Memorandum at 16.  Defendant also contends that courts in this circuit are divided on the issue of whether a disability claimant's learning disorder may be considered as a separate impairment for purposes of analysis under

§ 12.05C.  Defendant's Memorandum at 17.  Defendant's arguments are misplaced.

Courts in this district consider a claimant's learning disorder as a separate impairment from a claimant's mental retardation or low IQ impairment.  *See Graves v. Astrue*, 2012 WL 4754740, at *9 (W.D.N.Y. Oct. 4, 2012) (quoting *Williams v. Astrue*, 2008 WL 4755348, at *10 (S.D.N.Y. Oct. 27, 2008) ("It is plain that mental retardation is different from a learning disorder."))).  Moreover, as Plaintiff's mental retardation and learning disorder were diagnosed separately by two different doctors, Drs. Goldberg and Andrews, the ALJ erred in grouping Plaintiff's learning disorder with Plaintiff's mental retardation.  *See Kennerson v. Astrue*, 2012 WL 3204055, at *11 (W.D.N.Y. August 3, 2012) (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (ALJ is not a medical expert and cannot assume separate diagnoses referred to the same impairment))).  Based on the substantial evidence provided by Drs. Goldberg and Andrews, Plaintiff's learning disorder is a secondary impairment to Plaintiff's mental retardation, and Plaintiff satisfies the first prong required under § 12.05C.  The court therefore proceeds to consider whether Plaintiff's learning disorder causes an additional

limitation to Plaintiff's ability to function such that Plaintiff is able to meet the criteria for disability under the second prong of § 12.05C.

**Limitation of function under § 12.05C**

In *Hill v. Astrue*, 2013 WL 5472036, at *8 (W.D.N.Y. Sept. 20, 2013), Judge Telesca reviewed the state of the law, following the step two severity test adopted by the First, Eighth, and Tenth Circuits, as opposed to more rigorous tests adopted by the Fourth and Eleventh Circuits.  *See Hill*, 2013 WL 5472036, at *8-9 (correct standard to determine whether an impairment imposes a significant work related limitation under § 12.05C is the step two severity test).  *See also Velez v. Astrue*, 2013 WL 321552, at *6 (W.D.N.Y. Jan. 28, 2013) (*quoting MacMillan v. Astrue*, 2009 WL 8595781, at *20-21 (N.D.N.Y. Nov. 17, 2009)).

Despite Defendant's attempt to side-step the ALJ's erroneous determination that Plaintiff's learning disorder is severe under step two of the sequential analysis by arguing that Plaintiff's learning disorder is not a specific learning disorder as defined under the DSM-V, Defendant's Memorandum at 17, the ALJ's determination alone deems Plaintiff *per* se disabled under the second prong of § 12.05C.  Specifically, the ALJ's determination in this case that Plaintiff's learning disorder was "severe" under step two of the sequential disability analysis (R. 22), requires a finding that Plaintiff's learning disorder results in additional and significant work-related limitations of function for purposes of § 12.05C such that Plaintiff meets the criteria for disability under the second prong of § 12.05C.  Defendant's further contention that Dr. Andrews's diagnosis of "learning disability" in lieu of "learning disorder" mitigates the ALJ's determination at this stage of the disability analysis is therefore also unavailing.

Plaintiff thus sufficiently satisfies both prongs necessary to establish disability under § 12.05C of the Act, and Plaintiff should be deemed as disabled under § 12.05C. Plaintiff's motion for judgment on the pleadings should therefore be GRANTED as to the first and second prongs of § 12.05C, and remand should be ordered for calculation of benefits.

Should the district judge agree with the foregoing recommendation, Plaintiff is *per* se disabled, and further inquiry is not required.  In the event the district judge disagrees with the foregoing recommendation, the court proceeds to the next step of the analysis in order to determine whether Plaintiff, in addition to meeting the threshold criteria for mental retardation, is able to meet the criteria for disability under § 12.05D of the Act.

**§ 12.05D**

The ALJ next determined that Plaintiff was not disabled under § 12.05D of the Act, because Plaintiff exhibited no restriction to Plaintiff's activities of daily living or social functioning, experienced only moderate limitation to concentration, persistence and pace, and experienced no episodes of decompensation.  (R. 23). Plaintiff maintains that substantial evidence supports that Plaintiff  meets the criteria for disability under § 12.05D, as Plaintiff's mental retardation resulted in restriction to Plaintiff's activities of daily living, ability to maintain social functioning, and concentration, persistence or pace.  Plaintiff's Reply Memorandum at 3-4.

To be considered disabled under § 12.05D, a disability claimant must provide evidence of a valid verbal, performance, or full scale IQ of 60 through 70, that results in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05D ("§ 12.05D").

As discussed, Discussion, *supra*, at 13, substantial evidence in the record establishes that Plaintiff's full scale IQ of 61 meets the threshold IQ required under § 12.05D. Contrary to Plaintiff's assertion otherwise however, substantial evidence does not establish that Plaintiff's mental retardation results in marked limitation to Plaintiff's activities of daily living as required under § 12.05D1.

**§ 12.05D1 – activities of daily living**

Activities of daily living include adaptive activities like cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, personal hygiene, and using a post office.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C1 ("§ 12.00C1").  In this case, Plaintiff testified that he regularly takes out the garbage, cleans dishes, does laundry, shops for groceries, dresses and bathes independently, and drives a car.  (R. 37-40).  In the absence of any medical opinion to the contrary, substantial evidence establishes that Plaintiff's mental retardation does not result in marked restriction to Plaintiff's activities of daily living such that Plaintiff meets the criteria necessary to establish disability under § 12.05D1.

**§ 12.05D2 – activities of social functioning**

Activities of social functioning include a claimant's capacity to interact independently, appropriately, and effectively, on a sustained basis with others, the ability to get along with family members, friends, neighbors, grocery clerks, landlords, or bus drivers.  Impaired social functioning may be demonstrated by a history of

altercations, firings, avoidance of interpersonal relationships, and fear of strangers, evictions, and social isolation.   20 C.F.R. Pt. 404, Subpt. P, App 1 § 12.00C2 ("§ 12.00C2").

In this case, the ALJ determined that Plaintiff's mental retardation did not result in marked restriction to Plaintiff's activities of social functioning.  (R. 23).  Plaintiff contends that substantial evidence supports that Plaintiff's mental retardation results in marked restriction to Plaintiff's activities of social functioning, as Plaintiff is unable to live independently, or relate in social settings.  Plaintiff's Reply Memorandum at 4.

Contrary to Plaintiff's assertion otherwise, substantial evidence supports the ALJ's determination that Plaintiff's mental retardation does not result in marked restriction to Plaintiff's ability to engage in activities of social functioning.  In particular, Plaintiff testified that he was fired for reasons related to poor memory and concentration and not his ability to maintain social functioning.  (R. 38-39).  On March 3, 2010, Plaintiff reported good relationships with his family members, and that he liked to "hang out" with his friends.  (R. 170).  As such, substantial evidence establishes that Plaintiff's mental impairment does not result in marked limitation to Plaintiff's social functioning under § 12.05D2.

## § 12.05D3 – concentration, persistence or pace

In this case, the ALJ's determined that Plaintiff's mental retardation and learning disorder resulted in only moderate limitation to Plaintiff's ability to maintain concentration, persistence or pace.  (R. 23). This is contrary to substantial evidence in the record, supporting that Plaintiff's mental retardation results in marked restriction to Plaintiff's ability under § 12.05D3.

A disability claimant's concentration persistence or pace is considered "marked" when the claimant is not able to complete tasks without extra supervision or assistance, in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods,  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C3 ("§ 12.00C3").  Here, evidence supporting Plaintiff's marked limitation in his ability to complete tasks without extra supervision, maintain quality standards and work at a reasonable pace include Plaintiff's testimony that he was fired from his job at the Town of Tonawanda for continuously running into traffic after being reminded not to do so (R. 39), and a psychiatric examination conducted by Dr. Goldberg on March 3, 2010, wherein Dr. Goldberg questioned Plaintiff's ability to perform tasks independently and maintain attention or concentration long enough to maintain a regular work schedule. (R. 170).  Even though on June 15, 2010, Dr. Ryan assessed Plaintiff with satisfactory concentration (R. 264), he further assessed Plaintiff with sub-standard working memory, processing speed, and perceptual reasoning skills.  (R. 265).  On July 1, 2010, Dr. Shanley assessed Plaintiff with problems listening to and remembering three-step instructions, delayed communication skills that would be required in work with the public, and delayed ability to remember sequences in the context of supervisory orders. (R. 271-72).  Significantly, during the administrative hearing, Plaintiff testified that he was fired from his job because he was unable to maintain the required pace of work without special assistance (R. 7), and was not able to understand rapid supervisory instructions.  *Id.*

Accordingly, substantial evidence supports that Plaintiff's mental retardation results in marked difficulties to Plaintiff's ability to maintain concentration, persistence,

or pace enough to meet the criteria under § 12.05D3.  In most instances, the ALJ's

failure to properly consider such relevant evidence would require remand for further

development of the record.  *Kohler v. Astrue*, 546 F.3d 260, 269 (2d Cir. 2008) (remand

appropriate where ALJ fails to consider probative evidence) (citing *Lopez v. Secretary of*

*Health and Human Services*, 728 F.2d 148, 150-51 (2d Cir. 1984)).  However in this

case, the ALJ's error is harmless, as no evidence in the record supports that Plaintiff

experienced any episodes of decompensation as required under § 12.05D4, and

Plaintiff is able to meet only one of the two criteria required to be considered disabled

under § 12.05D.  As such, Plaintiff is not disabled under § 12.05 of the Act, and

Plaintiff's alternative motion on this ground should be DENIED.

## E. "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the

"residual functional capacity" to perform past relevant work.  "Residual functional

capacity" is defined as the capability to perform work comparable to the applicant's past

substantial gainful activity.  *Cosme v. Bowen*, 1986 WL 12118, at *3 (S.D.N.Y. 1986).

The ALJ specifically determined that Plaintiff retained the residual functional

capacity to perform a full range of work at all exertional levels with additional

nonexertional limitations that include no complex or detailed tasks, simple, unskilled

work, and occasional interaction with the general public.  (R. 24).

Plaintiff contends that the ALJ's residual functional capacity assessment is

without the support of substantial evidence as the ALJ failed to make findings as to

Plaintiff's ability to walk or stand, Plaintiff's Memorandum at 8, and improperly

considered Plaintiff's work as a security guard as past relevant work.  Plaintiff's

Memorandum at 17.  Plaintiff specifically contends that the ALJ's assessment failed to include consideration of Plaintiff's ability to respond to changes in a work setting, Plaintiff's Memorandum at 10, and failed to consider Dr. Andrews's opinion that Plaintiff should only work in low contact environments, and Dr. Goldberg's assessment that Plaintiff may not be able to perform tasks independently, maintain attention and concentration, or maintain a regular schedule.  Plaintiff's Memorandum at 11.  In this case, the ALJ's determination considered the effect of some, but not all of Plaintiff's mental abilities on Plaintiff's capacity to perform work-related functions.  (R. 26).

Although the Second Circuit has not yet ruled on whether a disability determination that does not expressly include discussion of the claimant's capacity to perform work-related functions listed under 20 C.F.R. 404.1545 (a)(b)(c)(d), is *per se* grounds for remand, *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013), in instances where an ALJ's disability determination fails to include a proper step two severity analysis, the error may be deemed harmless for purposes of the ALJ's residual functional capacity assessment when consideration of the impairment's limitation on the claimant's functioning is included.  *Graves*, 2012 WL 4754740, at *9 (step two error is not harmless where ALJ fails to include learning disorder as secondary impairment in the remaining steps of the disability analysis).

The ALJ in this case included symptoms resulting from Plaintiff's learning disability in questions posed by the ALJ to the VE, limiting such hypothetical Plaintiff to "simple, unskilled work . . . occasionally interact with the public, but there would be limits interacting with co-workers or supervisors."  (R. 46).  As noted previously, Discussion,

*supra*, at 20-21, substantial evidence supports that Plaintiff's mental impairments also resulted in marked limitation to Plaintiff's concentration, persistence and pace.

Although the Second Circuit has not yet decided whether an ALJ's hypothetical posed to a VE must include a claimant's limitations in concentration, persistence and pace,  *McIntyre v.* Colvin, 758 F.3d 146, 151 (2d Cir. 2014), ALJ's are required to consider the combined effects of a claimant's impairments in determining disability. *McIntyre*, 758 F.3d 146 at 151 (quoting *Dixon*, 54 F.3d 1019 at 1031.  Alternatively, in instances where an ALJ fails to incorporate nonexertional limitations in a hypothetical supported by evidence in the record, such error is harmless where the medical evidence demonstrates that the claimant is able to engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence and pace, and the hypothetical is limited to include only unskilled work, or implicitly accounts for the claimant's limitations in these areas.  *See McIntyre*, 758 F.3d 146 at 152 (quoting *Winschel v. Commissioner of Social Security*, 631 F. 3d 1176, 1180 (11th Cir. 2011).  Here, the ALJ posed a hypothetical to the VE that included simple, unskilled work (R. 46), where no evidence in the record exists to support that Plaintiff is capable of performing work of this nature because of Plaintiff's limitations in concentration, persistence and pace.  Significantly, Plaintiff testified that he was fired from work because he kept running into traffic despite continuous reminders not to do so (R. 39), testimony that not only supports that Plaintiff's mental impairments result in a limited ability to concentrate, but more markedly cause Plaintiff to lack a basic sense of situational awareness.

In the event the district judge does not agree with the foregoing recommendation for remand for calculation of benefits, Plaintiff's alternative motion for remand on this

issue should be GRANTED, to afford the ALJ the opportunity to include supporting evidence of Plaintiff's deficits in concentration, persistence and pace within the ALJ's hypotheticals posed to the VE and residual functional capacity assessment.

## F. Suitable Alternative Employment in the National Economy

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment , 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker*, 626 F.2d 225 at 231.  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id*.  An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.  *Decker*, 647 F.2d at 294*.*  In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-

skilled" or "skilled" job.[12]  *Id.* at 294.  This element is particularly important in

determining the second prong of the test, whether suitable employment exists in the

national economy.  *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of

Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the

Secretary's burden of proof concerning the availability of alternative employment and

supersede the requirement of vocational expert testimony regarding specific jobs a

claimant may be able to perform in the regional or national economy.  *Heckler v.

Campbell*, 461 U.S. 458, 462 (1983).

In this case, the ALJ determined that a significant number of jobs exist in the

regional and national economies that Plaintiff is able to perform.  (R. 27).  Plaintiff

contends that the ALJ's determination at step five of the disability analysis is error, as

the hypothetical questions posed by the ALJ to the VE were based on the ALJ's flawed

residual functional capacity assessment of Plaintiff.  Plaintiff's Memorandum at 12.

ALJ's may rely on testimony of vocational experts to determine whether jobs

exist that a disability claimant is able to perform as long as such hypothetical is based

---

[12] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled".
*Decker, supra*, at 295.
    "Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be
learned on the job in a short period of time.  The job may or may not require considerable
strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials
from machines which are automatic or operated by others), or machine tending, and a person can usually
learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A
person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).
    "Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the
more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching
machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding
equipment, property, materials, or persons against loss, damage or injury; or other types of activities
which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be
classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be
moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

on substantial evidence in the record.  *McIntyre*, 758 F.3d 146 at 151(quoting *Dumas*, 712 F.2d 1545, at 1553-54).  In this case, as discussed in connection with the fourth step, *i.e.*., Plaintiff's residual capacity to perform past work, Discussion, *supra*, at 21-22, the ALJ did not properly assess Plaintiff's limitations as to concentration, persistence or pace, and the ALJ's residual functional capacity assessment that relies on such flawed assessment is thereby without support of substantial evidence in the record.

In the event the district judge should disagree with the foregoing recommendation for remand for calculation of benefits, remand for a new hearing should be required to afford the ALJ the opportunity to include hypothetical questions to the VE that include the ALJ's revised functional capacity assessment of Plaintiff that includes all of the  evidence in the record.


## CONCLUSION

Based on the foregoing, Defendant's motion should be DENIED; Plaintiff's motion should be GRANTED as to judgment on the pleadings with remand for calculation of benefits.  Should the district judge disagree with this recommendation, Plaintiff's alternative request for remand should be GRANTED, and the matter remanded in accordance with this Report and Recommendation.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        June 24, 2015
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       June 24, 2015
             Buffalo, New York